UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| L.H., a minor, by and through Next Friend, ASHLYN HENRY, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. 4:25-cv-00592-SRC |
| WENTZVILLE R-IV SCHOOL DISTRICT et al., ) ) ) ) | |
| Defendants. ) | |

**Memorandum and Order**

L.H., a school-aged girl, by and through her next friend, Ashlyn Henry, originally filed suit in Missouri state court in 2021. After Wentzville R-IV School District and Megan Sutton removed the case in 2023 and requested dismissal, the Court dismissed Henry's federal claims and declined to retain supplemental jurisdiction over Henry's remaining state-law claims, remanding those claims to state court. Henry later amended her claims in state court and, on that basis, the District and Sutton again removed the case. The District and Sutton then filed a motion to dismiss, seeking dismissal of Henry's federal claims under Federal Rule of Civil Procedure 12(b)(6). Because Henry failed to plead facially plausible claims under federal law, the Court grants the motion to dismiss and again declines to retain supplemental jurisdiction over Henry's remaining state-law claims; the Court accordingly remands those claims to state court.

**I.    Background**

    **A.    Factual background**

The Court accepts the following well-pleaded facts as true for purposes of this memorandum and order. "L.H. was a student at" Heritage Primary School during "the fall of

2021." Doc. 6 at ¶ 13; *see id.* at ¶ 3. L.H. "was[] a minor, female child with a disability," *id.* at ¶ 1, and "had an Individualized Education Plan," *id.* at ¶ 14. On September 27, 2021, Kimberly Schwinn, a District employee working at L.H.'s school, "intentionally struck L.H., or recklessly contacted L.H. in such a manner as to cause her head to strike a wall inside the [s]chool." Doc. 6 at ¶ 16; *see id.* at ¶ 4. "The strike against L.H.'s head caused her to suffer an injury," *id.* at ¶ 17, yet despite the injury, "she was taken outside to the playground," *id.* at ¶ 18.

"While on the playground, L.H. fell to the ground" and "became pale, and her eyes rolled back in her head." *Id.* at ¶ 19. "L.H. was brought inside the" school, *id.* at ¶ 20, and while inside, "L.H. lost consciousness and defecated in her pants," *id.* at ¶ 21. "No one from [the District] or at the" school, including Tracy Hallemeier, a District employee working at L.H.'s school, "provided first aid or emergency treatment for L.H., nor did anyone secure emergency health services for L.H." *Id.* at ¶ 22; *see id.* at ¶ 5. The school "called L.H.'s parents" and, when they arrived, "L.H. vomited." *Id.* at ¶¶ 23–24. "School employees and law enforcement officers relayed to L.H.'s parents varying stories about how, when, and where she was injured, which contradicted each other." *Id.* at ¶ 25.

"L.H.'s parents took her to a hospital, where she underwent a CT scan," *id.* at ¶ 26, and later that same day, "L.H. was transferred to another hospital," *id.* at ¶ 27. In October 2021, the District "received a litigation hold notice, demanding that it preserve 'any and all video recordings of [L.H.] taken on the date of the occurrence.'" *Id.* (alteration in original). The District "vested in" Sutton, the school's principal, "the sole right and responsibility to determine which video recordings to preserve," *id.* at ¶ 31; *see id.* at ¶ 3, however, "Sutton chose not to preserve any video recordings of L.H. on" the date of the incident, "except some recordings of her outside on the playground," *id.* at ¶ 32.

2

Due to L.H.'s injuries, she "was forced to miss school and eventually to withdraw from" school. *Id.* at ¶ 35. Later, she "was diagnosed with a concussion and traumatic subdural hemorrhage with loss of consciousness." *Id.* at ¶ 36. L.H. has also "suffered many sequelae of her injury, including speech apraxia, post-traumatic stress, problems with gait and balance, a motor tic disorder, and seizures." *Id.* at ¶ 37. To boot, L.H. "was deprived of educational performance, opportunities, or benefits." *Id.* at ¶ 38.

B.     **Procedural background**

Henry, as next friend of L.H., originally filed her petition in Missouri state court in April 2021. Doc. 1 at ¶ 1; *see* Mo. Sup. Ct. R. 55.01 (requiring a "petition" in Missouri state court, Missouri's analogue to a federal complaint). The District and Sutton removed the case to this Court in June 2023, doc. 1 at ¶ 3; *see* Notice of Removal, *L.H. ex rel. Henry v. Wentzville R-IV Sch. Dist.*, No. 4:23-cv-00808-SRC (E.D. Mo. June 22, 2023), doc. 1, and each filed motions to dismiss, doc. 1 at ¶ 4. In December 2023, the Court granted the District's motion to dismiss, dismissing Henry's federal claims and declining to exercise supplemental jurisdiction over Henry's remaining state-law claims. *Id.* at ¶ 5; *see* Order, *L.H. ex rel. Henry*, No. 4:23-cv-00808-SRC (entered Dec. 19, 2023), doc. 16. The Court remanded those remaining claims to state court. Doc. 1 at ¶ 5; *see* Order at 8, *L.H. ex rel. Henry*, No. 4:23-cv-00808-SRC (E.D. Mo. Dec. 19, 2023), doc. 16 (The Court cites to page numbers as assigned by CM/ECF.).

Once back in state court, Henry sought—and that court granted—leave to amend the petition in January 2024. Doc. 1 at ¶¶ 7, 9. In June 2024, Henry again sought leave to file an amended petition, *id.* at ¶ 10, which the court granted in April 2025, *id.* at ¶ 11. Days later, the District and Sutton removed the case to this Court. *Id.* at ¶ 12. Henry's operative second-amended petition asserts five claims: (i) violation of 42 U.S.C. § 1983 against the

3

District for failure to train (Count I), doc. 6 at ¶¶ 40–52; (ii) violation of section 1983 against Sutton for failure to supervise (Count II), *id.* at ¶¶ 53–60; (iii) failure to provide treatment against Hallemeier, *id.* at ¶¶ 61–64; (iv) battery against Schwinn, *id.* at ¶¶ 65–68; and (v) negligence against Schwinn, *id.* at ¶¶ 69–72.  The District and Sutton filed a motion to dismiss, seeking dismissal of Count I against the District and Count II against Sutton for failure to state a claim. Docs. 9–10.  Henry filed a response brief, doc. 11, and the District and Sutton filed a reply brief, doc. 12.

**II.     Standard**

Under Rule 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  The notice pleading standard of Rule 8(a)(2) requires a plaintiff to give "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  To meet this standard and to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).  The Court must grant all reasonable inferences in favor of the nonmoving party.  *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010).

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff."  *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010). However, if a claim fails to allege one of the elements necessary to recover on a legal theory, the

4

Court must dismiss that claim for failure to state a claim upon which relief can be granted. *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011). Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. "A pleading that merely pleads 'labels and conclusions,' or a 'formulaic recitation' of the elements of a cause of action, or 'naked assertions' devoid of factual enhancement will not suffice." *Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Although courts must accept all factual allegations as true, they are not bound to take as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 677–78.

Only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 679. Therefore, the Court must determine if the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." *Id*. This "context-specific task" requires the Court to "draw on its judicial experience and common sense." *Id*.

**III.   Discussion**

In their motion to dismiss, the District and Sutton only request dismissal of Henry's section 1983 claims against the District and Sutton. The Court begins its analysis with the former claim and then turns to the latter. At the end, the Court addresses Henry's state-law claims.

   **A.   Henry's section 1983 claim against the District for failure to train**

The District and Sutton assert three reasons that Henry failed to adequately plead a failure-to-train claim under section 1983. First, Henry failed to assert "any factual allegations" to "show [that] the District had notice of a pattern of unconstitutional" conduct. Doc. 10 at 7; *see*

5

*also* doc. 9 at ¶ 5.  Second, notwithstanding the notice-of-a-pattern element, Henry failed to plead "any facts" to "show [that] the unconstitutional consequences were so obvious that the District [could] be reasonably said to have been deliberately indifferent to the need for training." Doc. 10 at 10; *see also* doc. 9 at ¶ 7.  And third, Henry "failed to allege sufficient facts to satisfy the stringent deliberate[-]indifference standard."  Doc. 10 at 8; *see also* doc. 9 at ¶ 6.  The Court focuses its analysis on the first two arguments.

To state a claim for supervisory liability under section 1983 for a failure to train or supervise, Henry must plead:  (1) notice of a pattern of unconstitutional acts committed by subordinates; (2) deliberate indifference to or tacit authorization of those acts; (3) failure to take sufficient remedial action; and (4) proximate cause of the plaintiff's injury.  *Livers v. Schenck*, 700 F.3d 340, 355 (8th Cir. 2012).  A failure to train may serve as the basis for section 1983 liability where "the failure to train amounts to deliberate indifference to the rights of persons with whom the" supervisor's employees "come into contact."  *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

Henry's second-amended petition does "not come close to" alleging "sufficient facts 'to state a claim to relief that is plausible on its face.'"  *B.A.B., Jr. ex rel. Allen v. Bd. of. Educ. of the City of St. Louis*, 698 F.3d 1037, 1040 (8th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570).  For starters, none of Henry's allegations indicate a pattern of unconstitutional acts *or* notice of such a pattern.  *See* doc. 6.  Henry instead alleges that "[d]isciplining students and caring for students who suddenly become ill or injured are usual and recurring situations [that District] teachers and support staff encounter on a regular basis."  *Id.* at ¶ 42.  And while the Court must accept as true Henry's allegation that the District "specifically knew that its teachers and support staff needed training regarding the treatment of ill or injured students," doc. 6 at ¶ 43; *Iqbal*, 556 U.S. at 678,

6

this and the rest of Henry's cursory allegations are a far cry from notice—i.e., awareness—of a pattern of unconstitutional acts committed by subordinates, *see Troupe v. Young*, 143 F.4th 955, 975 (8th Cir. 2025) (reversing a district court's dismissal of failure-to-train claim against St. Louis County, because the plaintiff's complaint "specifically alleged that healthcare staff [in the County jail] were not properly checking vital signs" and "the County and its officials *knew* they were not checking vital signs"; in sum, the defendant municipality "*w[as] aware of* th[e] [staff's] practice" (emphases added)).

As the District and Sutton put it, Henry fails to "point to a single incident of prior physical abuse by Schwinn (or any other teacher for that matter)[,] much less" that "the District had a history of widespread physical abuse of students." Doc. 10 at 7. Henry also fails "to identify a single incident in which the District failed to secure the necessary medical care for a student in an emergency situation" and did not "allege[] any facts suggesting" that "the District received any reports, complaints[,] or concerns" about "unconstitutional acts of corporal punishment or the failure to provide proper medical care." *Id.* Instead, Henry's allegations at most make clear the District's awareness "of a need for more and different training," doc. 6 at ¶ 43, and that "[d]isciplining students and caring for students who suddenly become ill or injured [were] usual and recurring situations" for the District's "teachers and support staff," *id.* at ¶ 42—allegations that do not cross the threshold of notice of a pattern of unconstitutional acts, *Livers*, 700 F.3d at 355; *see B.A.B., Jr.*, 698 F.3d 1040–41 (affirming lower court's decision granting motion to dismiss, in part, because the plaintiff's "inadequate and conclusory allegations regarding the [defendant's] failure to train" did not "state a claim").

Notwithstanding Henry's failure to plead the notice-of-a-pattern element, Henry attempts to go around that requirement by invoking the patently obvious exception. *See* doc. 6 at 5

7

("*Canton* Liability"); doc. 11 at 5 ("In rare cases, a single incident may support liability if the risk of constitutional violations was so obvious. . . ." (citation omitted)). True enough, "notice can be implied when a 'failure to train officers or employees is so likely to result in a violation of constitutional rights that the need for training is patently obvious.'" *Plamp v. Mitchell Sch. Dist. No. 17-2*, 565 F.3d 450, 462 (8th Cir. 2009) (quoting *Thelma D. ex rel. Barbara S. v. Bd. of Educ. of the City of St. Louis*, 934 F.2d 929, 934 (8th Cir. 1991)).

Henry's cursory allegations, however, do not allege a patently obvious need for training. While Henry alleges that the District "was aware of a need for more and different training," doc. 6 at ¶ 43, the second-amended petition contains no allegations setting forth why the District's "need for training [was] patently obvious," *Plamp*, 565 F.3d at 462 (quoting *Thelma D.*, 934 F.2d at 934). Likewise, Henry's allegation that the District "also specifically knew that its staff needed specific training on the use of corporal punishment," doc. 6 at ¶ 44, without any indication as to the patent obviousness of the need, amounts to a mere "'naked assertion[]' devoid of factual enhancement," *Hamilton*, 621 F.3d at 817 (quoting *Iqbal*, 556 U.S. at 678).

Henry's failure to plead the occurrence of prior physical abuse by teachers or staff, any history physical abuse of students, or any complaints or reports of such conduct by the District's staff further reinforces Henry's pleading deficiency. *See Watkins v. City of St. Louis*, 102 F.4th 947, 954 (8th Cir. 2024) (affirming dismissal of section 1983 claim because the plaintiff's "allegations [were] conclusory, and she [did] not assert specific instances or provide specific examples of inadequate officer training or supervising practices that could support an inference of an unconstitutional policy or custom"); *see also Parrish v. Ball*, 594 F.3d 993, 999 (8th Cir. 2010) (explaining that the court did "not believe that there [was] a patently obvious need to train an officer not to sexually assault women, especially where there [was] no notice at all that such

8

behavior [was] likely"). And Henry concedes that the second-amended petition "[did] not recite those incidents." Doc. 11 at 9 ("[T]hey do not appear on the face of the pleadings").

Nor do Henry's allegations regarding the District's numerous policies and regulations, covering building administration, corporal punishment, health services, and school-nurse duties, save the second-amended petition. The mere *existence* of these policies, however, did not equate to allegations that the District's "failure to train officers [was] so likely to result in a violation of constitutional rights that the need for training is patently obvious." *Plamp*, 565 F.3d at 462 (quoting *Thelma D.*, 934 F.2d at 934). Henry also did not allege "a pattern of violations" that "put the [school] on notice that the school's" employees' responses "to regularly occurring situations was insufficient to prevent the [allegedly] unconstitutional conduct." *Id.* at 462 (citing *Thelma D.*, 934 F.2d at 934); *see* doc. 6; *see also* doc. 11 at 9 ("[S]imilar issues with physical contact by staff on students are known to have occurred within [the District]. Granted, the [second-amended petition] does not recite those incidents; so, they do not appear on the face of the pleadings.").

Henry implores the Court that, "[g]iven the stakes of this case, L.H.'s helpless condition, and the procedural posture," Henry "should at least be allowed to conduct discovery" on the failure-to-train claim. Doc. 11 at 7. To be sure, this case presents factual circumstances amounting to every parent's (and teacher's) worst nightmare. The Court, however, must faithfully apply the law. The Court thus concludes that Henry's second-amended petition does not state a failure-to-train claim under section 1983 upon which relief can be granted. Therefore, the Court dismisses Henry's section 1983 claim against the District for failure to train.

B.     **Henry's section 1983 claim against Sutton for failure to supervise**

In their motion to dismiss, the District and Sutton argue that Henry did "not allege a single fact that . . . reflect[s] or show[s] [that] Sutton knew of a pattern of unconstitutional violations by the District's employees." Doc. 10 at 13; *see also* doc. 9 at ¶ 10. Moreover, Henry fails "to identify any unconstitutional acts that occurred before the incident at issue," the District and Sutton continue. Doc. 10 at 13–14. While the District and Sutton focus their arguments on the notice-of-a-pattern element, the Court addresses a different element in the failure-to-supervise test.

A court analyzes a claim for failure to supervise the same way it analyzes a claim for failure to train. *E.g.*, *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1216 (8th Cir. 2013). Thus, Henry must plead: (1) notice of a pattern of unconstitutional acts committed by subordinates; (2) deliberate indifference to or tacit authorization of those acts; (3) failure to take sufficient remedial action; and (4) proximate cause of the plaintiff's injury. *Livers*, 700 F.3d at 355.

Henry's section 1983 claim against Sutton lacks any allegations of Sutton's failure to take sufficient remedial action. Put simply, the second-amended petition does not contain *any* allegations—even liberally construing the petition in Henry's favor, *Huggins*, 592 F.3d at 862—related to the failure-to-take-sufficient-remedial-action element, *see* doc. 6. Henry, however, admits that she must plead a "failure to take sufficient remedial action" as part of the section 1983 claim against Sutton. Doc. 11 at 8 (first citing *Livers*, 700 F.3d at 355; and then citing *Tlamka v. Serrell*, 244 F.3d 628, 625 (8th Cir. 2001)). Nor does Henry provide the Court with any caselaw or argument supporting the proposition that the Court may disregard the failure-to-take-sufficient-remedial-action element. *See* doc. 11. And so because Henry did not

allege one of the necessary elements of the section 1983 claim for failure to supervise against Sutton, the Court must, and does, dismiss that claim under Rule 12(b)(6). *See Doe*, 660 F.3d at 355.

### C.     Henry's remaining state-law claims against Hallemeier and Schwinn

The District and Sutton removed this case based on federal-question jurisdiction and the Court's supplemental jurisdiction over related state-law claims. *See* doc. 1 at ¶¶ 15, 17. Given that the Court dismisses all Henry's federal claims and that no independent basis of federal jurisdiction exists for Henry's remaining state-law claims, the Court must consider whether it should retain supplemental jurisdiction.

The Court "may decline to exercise supplemental jurisdiction over a claim" if it "has dismissed all claims over which is has original jurisdiction." 28 U.S.C. § 1367(c). The Court makes this purely discretionary decision, *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009), by considering factors such as "the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims," *Aldridge v. City of St. Louis*, 75 F.4th 895, 901 (8th Cir. 2023) (quoting *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)). "In the 'usual case' where all federal claims are dismissed . . . , the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Starkey v. Amber Enters., Inc.*, 987 F.3d 758, 765 (8th Cir. 2021) (alteration in original) (citation omitted).

Considering the nature of the remaining state-law claims and the lack of factors distinguishing this case from other cases where courts dismiss federal claims before trial, the Court declines to exercise supplemental jurisdiction over Henry's remaining state-law claims.

11

The Court therefore remands Henry's state-law claims to state court. *Carlsbad*, 556 U.S. at 639; *see Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 31–32 (2025).

### IV.    Conclusion

Accordingly, the Court grants the District's and Sutton's [9] Motion to Dismiss Counts I and II of Plaintiff's Second Amended Petition. Because the Court has dismissed all federal claims and finds no reason to continue exercising supplemental jurisdiction over Henry's state-law claims, the Court remands them to state court. The Court directs the Clerk of Court to mail a certified copy of this order or remand to the clerk of the state court. A separate order of dismissal and remand accompanies this order.

So ordered this 15th day of August 2025.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE